UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br><br>BRETT MICHAEL MALONE,<br><br>    Defendant. | Case No. 1:21-cr-00155-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

On April 27, 2022, the Court held a hearing to determine whether Defendant Brett Malone is competent to stand trial. Dkt. 34. The Court took the matter under advisement. Upon review, and for the reasons stated below, the Court DEEMS Malone COMPETENT to stand trial.

## II. BACKGROUND

Malone is charged with attempted coercion and enticement in violation of 18 U.S.C. § 2422(b). Dkt. 9. On September 22, 2021, counsel for Malone moved for a competency hearing pursuant to 18 U.S.C. § 4241. Dkt. 16. Accompanying that motion was a report from Dr. James Davidson, a forensic psychologist, who conducted an independent mental health assessment of Malone at the request of Malone's counsel. Dkt. 17. Dr. Davidson advised that Malone *was not* competent to stand trial. *Id.* at 17.

The Court granted the motion for a competency hearing and ordered a competency evaluation pursuant to 18 U.S.C. §§ 4241 and 4247. Dkt. 18. Pursuant to that order, Malone

was transferred to the Federal Detention Center in SeaTac, Washington, where Dr. Ryan Nybo evaluated Malone. Dkt. 19. Dr. Nybo advised that Malone *was* competent to stand trial. *Id.*

After receiving Dr. Nybo's evaluation report, the Court held a hearing on the issue of competency on April 27, 2022. Dkt. 34. Dr. Davidson and Dr. Nybo both testified as well as Special Agent Thomas Sallaway and Malone's former employer, Curtis Batho. *Id.* Additionally, Malone's counsel submitted a written proffer regarding his interactions with Malone. At the conclusion of the hearing, the Court ordered simultaneous briefing in place of closing arguments. Both parties submitted their briefs on May 20, 2022. Dkts. 41, 42.

### III. LEGAL STANDARD

The test for competency is whether the defendant has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). "Competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense." *United States v. Dreyer*, 705 F.3d 951, 961 (9th Cir. 2013) (quoting *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997)). The defendant must have such a rational and factual understanding throughout the proceedings—i.e., at trial as well as at sentencing. The Court's obligation to assess competency is a continuing one that persists through the sentencing phase. *United States v. Duncan*, 643 F.3d 1242, 1248 (9th Cir. 2011) (The "competency right does not end at a conviction."). "Although the level of competency mandated by due process does not vary based on the specific stage of the criminal proceeding, the defendant's ability to participate

or assist his counsel must be evaluated in light of the type of participation required." *Dreyer*, 705 F.3d at 961 (citing *Godinez v. Moran*, 509 U.S. 389, 400–01 (1993)).

"At all times before his conviction, a defendant must have a rational as well as [a] factual understanding of the proceedings against him and a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Duncan*, 643 F.3d at 1248 (cleaned up). If either of those requirements is not satisfied, "then the proceedings against him may go no further." *Id.* Following a conviction, the defendant must have "the capacity to appreciate his position and make a rational choice as to whether to challenge his conviction or sentence on appeal or in post-conviction proceedings." *Id.* (cleaned up).

The standard applicable to this analysis is a preponderance of the evidence. 18 U.S.C. § 4241. A defendant is incompetent "[i]f, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* The Government bears the burden of proving the defendant is competent to stand trial. *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991).

When determining a defendant's competency, the Court may consider expert testimony as well as counsel's observations and evaluations of the defendant. *See United States v. Garza*, 751 F.3d 1130, 1137 (9th Cir. 2014); *Stanley v. Cullen*, 633 F.3d 852, 861 (9th Cir. 2011). A court should also evaluate its own interactions with a defendant, including whether the defendant is alert and able to testify coherently and participate in

MEMORANDUM DECISION AND ORDER - 3

colloquies with the court. *See Williams v. Woodford*, 384 F.3d 567, 604 (9th Cir. 2004); *United States v. Lewis*, 991 F.2d 524, 528 (9th Cir. 1993).

## IV. DISCUSSION

Dr. Nybo diagnosed Malone with a mild intellectual disability.[1] Dr. Nybo also testified that Malone could suffer from borderline intellectual functioning, which lies between normal intellectual functioning and impaired intellectual functioning. Malone's disability is not in dispute. Rather, the parties disagree as to whether Malone is incompetent because of his disability.

Competency is not a categorical inquiry where certain diagnoses make a defendant per se incompetent and other diagnoses do not. *See Atkins v. Virginia*, 536 U.S. 304, 318 (2002). Rather, the Court must determine by a preponderance of the evidence whether the specific defendant, in this case Malone, has the ability to understand the nature and consequences of the proceedings and assist counsel in his defense.

Dr. Nybo testified at length about Malone's diagnosis and performance on various psychological tests. Before evaluating Malone, Dr. Nybo received a copy of Dr. Davidson's report with the results from the psychological tests Dr. Davidson administered. Though Dr. Nybo did not have any issue with the validity of the tests administered by Dr. Davidson, Dr. Nybo administered different tests to avoid any practice effect. For instance, Dr. Davidson administered an IQ test on which Malone scored 59. Rather than

---

[1] While Dr. Davidson did not make any diagnosis in his report, he agreed with Dr. Nybo's diagnosis at the hearing on April 27th.

readministering the IQ test, Dr. Nybo accepted that result for purposes of his evaluation.

An IQ of 59 is certainly low. However, Dr. Nybo testified that Malone's adaptive functioning was such that he possessed certain skills and abilities that someone else with an IQ of 59 may not have. For instance, Malone's adaptive functioning allowed him to have a job and a driver's license and to use technology. Malone also demonstrated better vocabulary and verbal skills during Dr. Nybo's evaluation than Dr. Nybo anticipated based on Malone's IQ score and other intellectual tests administered by Dr. Davidson he had reviewed. Upon being told the meaning of a word, Malone could then use it in context.

Dr. Nybo spoke with Malone about his case, and Malone was able to provide significant details. For instance, Malone told Dr. Nybo that the minor victim told him she was out partying at 3:00 a.m. and that minors should not be out at that time. This detail was significant to Dr. Nybo because it not only demonstrated that Malone could remember what was communicated to him, but also demonstrated that Malone could make the connection that partying at 3:00 a.m. is not typical behavior for a minor. Malone was also able to give Dr. Nybo a clear and logical account of the events leading up to his arrest, and that account was consistent with the discovery in the case.

Dr. Nybo's evaluation also revealed that Malone was able to discuss and understand the relevant legal proceedings. Malone understood the concept of a plea agreement, and he told Dr. Nybo what sort of plea agreement he would accept based on his past plea agreement in another case. He also told Dr. Nybo about his past experiences with probation. Malone talked to Dr. Nybo about the sentence that he faced—a mandatory minimum of 20 years. Unprompted, Malone also told Dr. Nybo that he knew he did not have to testify. He

MEMORANDUM DECISION AND ORDER - 5

also knew that if he did testify, evidence of his prior sex offense convictions could be admitted. Malone was also able to articulate his defense—i.e., that he did not know that the minor victim was a minor because she told him she was 19. That is a valid defense to an enticement charge.

Often during the evaluation, Malone would tell Dr. Nybo that he did not understand or know what something meant. However, once Dr. Nybo asked additional questions or explained the context or meaning, Malone demonstrated he then understood and was able to discuss the concept and use the right terms in context. What's more, Malone demonstrated that he had the ability to remember details.

All of this led Dr. Nybo to conclude that Malone's adaptive functioning was such that Malone could understand the nature and consequences of the proceedings and assist his counsel with his defense.

Dr. Davidson reached the opposite conclusion. Notably, Dr. Davidson did not diagnose Malone when he first evaluated him. At the hearing, Dr. Davidson agreed with Dr. Nybo's diagnosis. Absent from Dr. Davidson's report was any reference to Malone's adaptive functioning skills. Dr. Davidson testified that certain skills and abilities do not equate to having a factual or rational understanding of a legal proceeding. Malone may be able to work at a job and drive, Dr. Davidson explained, while still not being able to meet the standard for competency. Dr. Davidson also testified that Malone has a third grade reading comprehension. Like Dr. Nybo, Dr. Davidson testified that during his evaluation of Malone, he had to stop to explain terms to Malone. While Dr. Davidson concluded that Malone was incompetent, his evaluation interview largely corroborates Dr. Nybo's

testimony about Malone's comprehension and ability to discuss his case.

In addition to the expert testimony from Dr. Nybo and Dr. Davidson, Malone's former employer, Curtis Batho, testified at the hearing. Batho testified prior to Malone's arrest, Malone excelled in his position. Malone's job responsibilities included laying materials out for fencing projects, putting together orders, stocking shelves, and operating a forklift. These responsibilities required Malone to do math, make distinctions between various parts, and pass a forklift certification test. Malone regularly communicated with Batho via text message, and those messages did not prompt any concern for Batho about Malone's ability to read or write. At one point, Batho closed the business where Malone was employed, but when Batho started up a new business, he specifically reached out to Malone to offer him a job. After Malone's arrest, Batho told Pretrial Services that Malone was not eligible for rehire. At the hearing, Batho testified that this was solely because of Malone's arrest and what Batho has since learned about Malone's criminal history, and not because of any deficiency in Malone's work performance.

At the hearing, Malone's counsel, Andrew Parnes, submitted a written proffer detailing his concerns regarding Malone's competency. In that proffer, Parnes explains that a few days after being appointed as counsel, he met with Malone, and during that meeting, Malone was unable to provide him details of his history and upbringing. Parnes also reported Malone struggled to, or could not, read materials provided by Parnes. Additionally, Parnes observed that Malone often did not understand what certain words or phrases meant. Parnes would explain the meaning to Malone who would seem to then understand, but later Malone could no longer recall the meaning.

MEMORANDUM DECISION AND ORDER - 7

Beyond these observations, Parnes's proffer also gave some background information about Malone. As a child, Malone attended special education classes in elementary school. He left school around the eighth grade. As a juvenile and as an adult, Malone has received social security income for his mental disabilities.

Upon reviewing the evidence, the Court finds that although Malone has mild intellectual disability, he is competent to stand trial. Under 18 U.S.C. § 4241, a defendant is incompetent only if a mental disease or defect causes an inability "to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

Here, the preponderance of the evidence shows that while Malone may have some difficulty in understanding terms and concepts, he can understand when provided explanations, and he can retain and recall information. Malone understands what he is charged with and what his defense is. Malone can read—though he may need some assistance with unfamiliar or difficult words. He also understands the potential outcomes of his case. For these reasons, the Court finds that Malone can understand the nature and consequences of the proceedings.[2]

The preponderance of the evidence also shows that Malone can assist properly in his defense. Malone told Dr. Nybo that his defense was that the minor victim told him she

---

[2] Another court has found Malone competent to stand trial on another occasion. That competency determination does not control here. After all, the Court has continuing responsibility to assess Malone's competency throughout these proceedings because competency can change. However, the Court notes that Malone's past experiences with criminal proceedings and probation add credibility to the testimony of Dr. Nybo that Malone does understand the nature and consequences of legal proceedings.

was 19 and he had no knowledge that she was actually a minor. Indeed, Malone even was able to connect the minor victim's presence at a party at 3 a.m. to his defense that he did not know she was a minor. And he can communicate and cooperate with his counsel.

Because Malone satisfies both competency conditions in 18 U.S.C. § 4241, the court concludes that Malone is indeed competent to stand trial.

## V. ORDER

The Court HEREBY ORDERS:

1. Defendant Brett Malone is DEEMED COMPETENT to stand trial.

2. That a new trial be set for **August 15, 2022, at 1:30 p.m.** in the U.S. Courthouse in Boise, Idaho.

3. The delay resulting from the time of the Defendant's Motion (Dkt. 16) until the Court's resolution of the of the competency question and resetting of the trial, is deemed excludable time pursuant to 18 U.S.C. § 3161(h)(1)(A).

4. That a new trial readiness conference be conducted by telephone on **August 2, 2022, at 4:00 p.m. (mountain time).** The Government shall place the call to (208) 478-8391 with opposing counsel on the line.

DATED: June 23, 2022

David C. Nye
Chief U.S. District Court Judge